**LaVern TAYLOR, Plaintiff-Respondent,**

**v.**

**Waldo M. HITT and Florence Hitt, Defendants-Appellants.**

**No. 30597.**

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1961.

Motion for Rehearing or to Transfer to Supreme Court Denied and Opinion Modified Feb. 23, 1961.

Derrick & Holderle, Tyree C. Derrick, St. Louis, for appellants.

Leonard A. Siebels, Koenig, Dietz & Siebels, William L. Mason, Jr., St. Louis, for respondent.

BRADY, Commissioner.

The respondent had resided with her husband in an apartment they rented from the appellants in the City of St. Louis, Missouri, for about four months prior to the occasion in evidence. The apartment had accommodations for three families; the respondent and her husband lived upstairs, as did Mr. and Mrs. Dunn. The appellants, who owned the apartment, lived downstairs. The respondent and her husband had the privilege of using the basement for washing, and a machine with a wringer and two galvanized tubs on legs were furnished for this purpose by the appellants. Mr. and Mrs. Dunn had lived at this apartment for over two years and had been using these washing facilities. The wringer on the machine could be swung in either direction so that clothes could be wrung directly from the machine into either tub. The drain described in the evidence had been there all this time, and Mrs. Dunn described

it in her testimony as being a depression about 1½ ft. square, with a pipe in the center of it. She further testified that it sloped down toward the center of this pipe; that there never had been any cover placed over the depression and that the concrete floor of the basement, while not real smooth, is not as rough a surface as that found on sidewalks; that her wash day was Tuesday and that the respondent had been down to talk to her while she was washing; that the machine and tubs were stored against the wall and that her procedure was to take a hose that was also there and wash out these tubs; that the water runs directly out of these tubs through a drain at their bottom; that water runs out of the machine through a hose that lays on the floor; that the water from the machine is soapy with detergent in it; that as she washed the water fell where it wanted to and that as a result of this washing and of squeezing the clothes water gets around this depression, and that when the area around the drain gets wet it was not real slick but that one might slip if they did not watch what they were doing; that she had fallen once but not in this depression; that she had never seen respondent wash or how she usually placed the tubs with reference to this depression except that on the day of this occurrence the tubs were setting close to the square depression. She stated that one could slip with flat leather soles on one's shoes. When she got downstairs she saw the respondent lying on the floor next to the hole under the stairway on her back and "her leg was in, laying over in the hole partway."

The respondent's husband testified that when he and the respondent were shown the apartment, he went down to the basement but his wife stayed upstairs; that this drain was pointed out to him by appellants; that the tubs were stored about eight feet away from the drain, that the drain was about 16 to 18 inches square, and sloped in toward its center from the corners of it to a 4 inch pipe; that at the corners the depression was 3 to 3½ inches deep, but was deeper than that at the center of it; that when he got home he saw his wife lying with her head toward the east wall of the basement and with her leg across the drain; that on three other occasions he had gone to the basement to carry clothes up, but had never been there while his wife washed and so did not see how she had arranged the machine and tubs on those occasions; that he had been to the basement on one other occasion to change a fuse; and that this drain was not in the actual center of the floor but was visible to anyone, the basement being well lighted. He described the basement floor as being of smooth concrete that would become slick when water was placed on it.

The respondent introduced certain parts of the appellants' deposition into evidence. The deposition of the appellant Florence Hitt showed that this drain was round, but was set in a square depression which slopes slightly toward its center; that this drain was there when they purchased the house and has never been covered; that on the day the respondent was injured, Mrs. Hitt found her lying on the floor with her feet near the drain; that the drains on the bottom of the tubs were of the screw type and no hose was furnished for them; and that water splashed on the floor as the clothes were moved from one tub to another. The testimony of the appellant Waldo Hitt, given by deposition and read at this trial, was that he and his wife owned this residence at the date of respondent's injury; that this depression was about 15 inches square, and about 1½ to 2 inches deep; and that the condition of the floor was wet and soapy. The respondent furnished her own soap.

The police officer who was called to the scene on the date of this occurrence testified that he found the respondent lying near this depression on the floor with her leg across it; that the depression was 15 to 18 inches square, 3 to 4 inches deep on the sides, and 4 to 5 inches deep in the middle; that the basement gradually sloped toward this square depression so that water could run off; that the floor of the basement wasn't

slick but was smooth; and that it was damp around the square when he arrived.

The respondent's evidence was that this wringer on the machine swings to three sides of the washing machine so that clothes could be wrung out on either side directly into the tubs; that she had washed in the basement at least two or three times before this; that the floor of the basement was smooth; that she pulled the machine out from the wall to the center of the drain in order to plug it into an outlet which extended down from the ceiling above the drain; that after the machine was plugged in, she moved it to the north of the drain about one or two feet; that she placed these tubs one to the east of the machine and one to the west of it, about 6 or 8 inches from this drain; that she washed out the tubs using a hose extending from the north wall of the basement and a rag or sponge; that she then loosened the plugs in the bottom of the tubs to let the water go on the floor and into the drain; that the floor was then wet; that she then filled the tubs with clean water and as the clothes finished washing she ran them through the wringer into the first rinse water in the tub east of the hole, then back through the wringer into the second rinse tub west of this drain, and then through the wringer into a clothes basket or into her hands to be hung up to dry; that during this process water splashed on the floor; that the appellant Florence Hitt had seen her washing once when the floor was wet; and that she was wearing low "ballerina type" shoes on this occasion. The respondent further testified that she had completed four or five tubs of wash and was about finished when this occurrence took place; that she had just finished rinsing clothes from the first rinse tub into the second rinse tub, the water being very soapy by then, and had started to walk to the second tub when this occurrence took place; and that she had taken one step, and on taking the second step slid and "* * * went into the hole and completely lost my balance." Upon cross-examination respondent testified that she wore glasses on the date of this occurrence and that they stayed on when she fell; that the drain was obvious and there was good light; that she had added more detergent to the water as she washed, but hadn't added any more water; that water from the tubs and from the machine were both on the floor, having run out and been splashed out; that she had shoes with leather heels on them; that she knew the floor was slippery and knew how the drain was constructed; and that her foot slid about 6 or 8 inches. When asked, "* * * if it hadn't been for the soapy water, you wouldn't have slipped, would you?" she replied, "If it hadn't been that the basement was wet, I wouldn't have slipped and if the hole hadn't been open, I wouldn't have fell."

The appellants offered no evidence in this case, and stood on their motion to dismiss or for directed verdict at the close of plaintiff's case. The trial court denied that motion and submitted the case to the jury, with the result that a verdict was returned against appellants in the amount of $5,000. The record discloses that this judgment was rendered in the trial court on March 2, 1960. On March 7th of that same year, the appellants filed their motion entitled "Motion To Set Aside The Verdict And Judgment Entered Thereon For The Plaintiff And To Enter A Judgment For The Defendants Or In The Alternative For A New Trial." This motion was overruled by the trial court on April 4, 1960.

We are first confronted with the respondent's motion to dismiss this appeal which was taken with the case when it was submitted. The respondent points out that appellants do not appeal from any judgment or order enumerated in Section 512.020 RSMo 1949, V.A.M.S., but instead file their notice of appeal from the order of the court overruling the defendants' motion to set aside the verdict and judgment entered therein for the plaintiff and to enter a judgment for the defendants or in the alternative for a new trial.

The appellants contend that respondent's motion is hypertechnical. The

rules of appellate practice have been held to have substance, not to be merely "red tape" and to serve a worthwhile purpose. Ambrose v. M. F. A. Co-Operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647, at loc. cit. page 648. Nevertheless the judgment of March 2, 1960, being the only appealable judgment in the case and the motion for new trial and the notice of appeal having been timely filed, we will consider the appeal as an attempt in good faith to appeal from the judgment. The motion to dismiss is denied.

The appellants raise two points in their brief: first, that the trial court erred in failing and refusing to direct a verdict for them; second, that the trial court erred in giving Instruction No. 1. Our recitation and summation of the evidence is therefore limited to that which bears upon these contentions.

The plaintiff's theory was that the basement of the apartment house was a common portion of the premises made available by appellants to all of the tenants, so that they could wash their clothes there; that while the respondent was so engaged, she fell and was injured; that the floor of the basement was not a reasonably safe place to walk or to wash clothes due to the presence of this depression in the floor, and that this condition of the floor was known to the appellant and had existed for some years prior to respondent's fall. It is the rule that a landlord has the duty to use ordinary care to keep those portions of the premises over which he retains control in a reasonably safe condition, Thompson v. Paseo Manor South, Inc., Mo.App., 331 S.W.2d 1; Gray v. Pearline, 328 Mo. 1192, 43 S.W.2d 802; Peterson v. Brune, Mo., 273 S.W.2d 278. The cases are collected in Missouri Digest, Landlord and Tenant, It is also well established that where premises are let to several tenants, each occupying a different portion of the same house but two or more using the same halls, passageways, porches, etc., the landlord is held to have reserved such facilities for common use and consequently is in control thereof. Woodley v. Bush, Mo. App., 272 S.W.2d 833, at loc. cit. page 834 [1]; Thompson v. Paseo Manor South, Inc., supra; Gray v. Pearline, supra; Peterson v. Brune, supra. In the instant case, the evidence is that these tenants, the respondent and her husband and the Dunns, had the privilege of using the basement for washing, and were so informed by the appellants. It is therefore clear that the appellants retained control over the basement and were under the duty to use ordinary care to keep that place in a reasonably safe condition for the respondent to use in washing clothes.

Now, was there evidence to show a breach of that duty by the appellants, or does the evidence, as appellants contend, fail to show any negligence on their part? In this connection we are only to consider the hypothesization of negligence submitted to the jury by respondent's instruction when we are considering a contention that the trial court erred in overruling the motions for a directed verdict. Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124. Since there was no evidence offered by the appellants in this case, it is not necessary to state that such evidence would be disregarded except so far as it aided respondent's case, but it is axiomatic that respondent is entitled to have all of the evidence given in her case viewed in the light most favorable to her, and she is to be given the benefit of all reasonable inferences to be drawn therefrom not in conflict with her theory of the case. Missouri Digest, Appeal and Error 989. Respondent's verdict directing Instruction No. 1 reads:

"The Court instructs the jury that if you find and believe from the evidence that on April 15, 1959, the rectangular depression in the basement flooring at 4420 South Grand Avenue was approximately 15 inches square and approximately 2 to 4 inches deep; and that by reason of the existence of the

said depression, the said basement was not a reasonably safe place for tenants of the defendants while using the laundry equipment and while exercising ordinary care in so doing; and that the defendants failed to exercise ordinary care for the safety of their tenants by allowing said unsafe condition to exist, if you find that it was unsafe; and that defendants were thereby negligent; and that plaintiff was in said basement, near said depression, and doing laundry on said date; and that at all times shown to you in the evidence plaintiff exercised ordinary care; and that plaintiff's foot started to slip on the floor near the said depression; and that directly due thereto her foot went into the said depression; and that directly due to her foot going into the said depression she sustained injury to her person; and that her injury was directly caused by said unsafe condition, if you find that it was unsafe; and that her injury was directly caused by said negligence, if any, of the defendants; then your verdict should be for the plaintiff, LaVern Taylor, and against the defendants Waldo M. Hitt and Florence Hitt."

Generally speaking, the duties imposed by the law of torts arise out of circumstances and are based on foreseeable or reasonable anticipation that harm or injury is a likely result of acts or omissions to act. Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623; Emery v. Thompson, 347 Mo. 494, 148 S.W.2d 479; Street v. W. E. Callahan Const. Co., Mo.App., 147 S.W.2d 153. It is not the unusual manner of receiving injuries that determines liability, but that question depends on whether the appellants can be said to have reasonably anticipated that the maintenance of this depression in the basement where their tenants were going to wash clothes would result in injury. See Thompson v. Paseo Manor South, Inc., supra. Negligence is not a question of law unless the acts on which its existence depends are of such a character that reasonable minds could not differ and would concur. Hill v. Torrey, Mo.App., 320 S.W.2d 594; Wilson v. Wells, 321 Mo. 929, 13 S.W.2d 541. Where different conclusions can be drawn from the evidence, negligence is a jury question, Steele v. Woods, Mo., 327 S.W.2d 187.

It is obvious from the testimony in this case and from Instruction No. 1 that all the respondent relies on to show the appellants' negligence is their action in allowing the existence of a 15-inch square depression, two to four inches deep, which sloped toward a 6-inch drain tile which in turn had a perforated cover over it, in the basement which the appellants knew was to be used by their tenants for washing clothes. There is no contention that the basement was not well lighted and the testimony of the respondent herself is that it was. She also admits she knew of this depression and that it was obvious to the sight, and that she had washed clothes in the basement on two or three other occasions. It follows, therefore, that if reasonable minds could differ as to whether or not the appellants could have reasonably anticipated injury to result from the fact that the floor of the basement where their tenants washed clothing had this depression in it, then that matter was properly submitted to the jury and the trial court stands absolved of error.

The appellants maintained this area for the specific purpose of washing clothes by their tenants, and by placing the tubs and machine therein prepared the area for that specific purpose. They knew that this depression was to be the very hub of this activity because of the lack of hoses on the tubs and the fact that there was no other drain for the soapy water from the machine and tubs to run into. This is also shown by the location of the electrical outlet into which the machine was plugged while in use, which was stated to extend down from the ceiling above the drain. The appellants therefore knew that the respond-

ent would be working in the area immediately adjacent, if not right over, this 15-inch square depression two to four inches deep in the floor. We are not prepared to rule that as a matter of law, a reasonable mind could not find that the appellants could not have reasonably foreseen some injury to result from the presence of a depression of this size, constructed in this manner and located in an area the appellants knew was to be used for washing clothes with all the attendant escape of water onto the floor that could reasonably be expected to result from that activity. We rule against appellants' contention that the evidence failed to show any negligence upon the part of the appellants.

The appellants then contend that the evidence fails to show that their alleged negligence in maintaining this area for washing purposes by their tenants with this depression in it was the proximate cause of the respondent's injury. At the trial, appellants admitted the causal relationship between the fall and the breaking of the leg, and therefore it is unnecessary for us to consider how the fall caused the injury. However, the appellants' contention is that the respondent's injury was caused directly and proximately by slipping in the soapy water, and in their statement of facts in their brief make the following statement to the effect that the respondent: "* * * spilled soapy water on the concrete basement floor, stepped in it and fell and then her foot slipped into a depression built in the floor * * *." While statements to this same effect, viz., that the fall occurred before respondent's foot went into the depression, are several times reported in appellants' brief, they are not borne out by the respondent's testimony and the inferences reasonably to be drawn from it which were to the effect that it was the presence of this depression that caused her fall, and that she did not fall until after her foot went into this depression. The respondent testified that "* * * my foot slipped to this hole. My ankle and my leg cracked up against the sharp edge of this cutout and I completely lost my balance and fell on my back"; that "I slipped and went into the hole and completely lost my balance"; and that "If it had not been that the basement was wet I would not have slipped and if the hole had not been open I would not have fell." It should be noted that respondent's Instruction No. 1 required the jury to find that respondent's injury was directly due to her foot going into the depression. The jury so found, and the evidence recited above supports that finding.

Considering the legal aspects of the question of proximate cause, it has been said that the usual test as to causal connection is whether the facts show that absent the negligent act the injuries would not have been sustained, Housden v. E. I. DuPont De Nemours & Co., Mo., 321 S.W.2d 430, at loc. cit. page 433. There need not be an absolute and mathematical certainty that absent the negligent act the injuries would not have been sustained. If there is substantial evidence which shows that the injury is a natural and probable consequence of the negligent act or omission, it is sufficient. Steele v. Woods, supra. It should also be remembered that when considering the question of causal connection, liability does not depend upon the reasonable foreseeability of the exact injuries complained of, but the appellants may be held responsible for any injury which, after the casualty, appears to have been a natural and probable consequence of negligence. Boyd v. Terminal R. Ass'n of St. Louis, Mo., 289 S.W.2d 33, at loc. cit. page 37, 59 A.L.R.2d 1222. The statement of the respondent to the effect that if the hole had not been open, she would not have fallen, came into the evidence without objection or motion to strike, and from that testimony and the other evidence we think there is sufficient evidence from which the jury could meet the above stated test and find that if it had not been for the presence of this depression in the floor, the fall would not have occurred, and therefore respondent's injuries, which the appellants

admitted at the trial resulted from the fall, would not have come about. We rule against appellants' contention that the evidence fails to show that appellants' negligence was the proximate cause of respondent's injury.

The last argument advanced by appellants in contending that the trial court erred in overruling their motions for directed verdict is that the respondent is guilty of contributory negligence as a matter of law. Insofar as the appellants' contention as to this point deals with the fact that the respondent knew of the presence of this depression and of the condition of the floor when wet, having washed clothes there on prior occasions, is concerned, the appellants have overlooked the nature of the relationship between appellants and respondent. This is a landlord and tenant case and a different rule applies than in a business invitee or licensee case. In the latter type of case, lack of knowledge is an essential element of the invitee or licensee's case and therefore knowledge of the existence of the dangerous condition constitutes a defense to an action for injuries, but in a landlord and tenant case, actionable negligence may exist even though the injured party may be aware of the defect and its dangerous potentialities, O'Neill v. Sherrill, Mo.App., 254 S.W.2d 263, at loc. cit. page 267; Lewis v. Gershon, Mo.App., 335 S.W.2d 522, at loc. cit. page 524. The difference is that in this case the respondent's knowledge of this depression in the floor is not a defense but is of force only insofar as it bears upon her contributory negligence, Coplen v. Zimmerman, Mo., 271 S.W.2d 513, at loc. cit. page 517; Lewis v. Gershon, supra. The respondent may have had knowledge of this depression, but even so she was entitled to use this basement area provided that she exercised due care in view of the hazard or unless the hazard was of such a dangerous character that no reasonable person in the exercise of due care would use the area, Coplen v. Zimmerman, supra. We have held herein the maintenance of this depression to create a question for the jury as to whether or not such conduct constituted negligence, and so do not find this hazard of such a dangerous condition that no reasonable person using due care would use it. Neither is there evidence in this case sufficient for us to say, as a matter of law, that the respondent failed to use due care in the use of this area for washing, in view of her knowledge of the depression.

In urging that the respondent was guilty of contributory negligence as a matter of law, the appellants place their main reliance upon the principle stated in 2 Restatement of Torts, 1251, 1252, Paragraph 478 that:

> "When the negligent act of the plaintiff is necessary to make a dangerous situation negligently created by the defendant effective in harm, the plaintiff's negligence is always a contributory factor in producing his harm and as such prevents him from recovery against the negligent defendant."

Appellants' argument is that even if they were negligent in maintaining this depression, the respondent cannot recover because she splashed soapy water on the floor, making it slick, and thereby made "effective in harm" the negligently maintained depression. The appellants rely upon Hamilton v. Laclede Electric Cooperative, Mo., 294 S.W.2d 11; Fox v. Italian Fraternal Building Co., Mo.App., 257 S.W.2d 165; and Coleman v. North Kansas City Electric Co., Mo., 298 S.W.2d 362; and contend that the decisions therein compel a ruling in their favor on the issue of contributory negligence.

Fox v. Italian Fraternal Building Co., supra, is not applicable to our consideration of the instant case. That case involved a personal injury action by a person who fell on the dance floor which had been leased for one night by the Italian Fraternal Building Co. to the St. Louis Lonely Club. The St. Louis Lonely Club held a public dance and applied floor wax which was supplied by the Italian Fraternal Building

Co. to the dance floor. The contention was that the wax had been negligently applied to the dance floor, causing the fall. The case dealt with premises leased for public exhibitions and entertainments and this court recited the rule limiting the owner's liability in those cases to conditions existing at the time of the demise, holding that the Italian Fraternal Building Co. was not liable because the condition of the floor was not one of the Building Company's making which existed at the time of the demise to the St. Louis Lonely Club. We fail to see the application of that case to the factual situation at bar.

Hamilton v. Laclede Electric Cooperative, supra, was not a landlord and tenant case at all, but was an action for injuries suffered by Mrs. Hamilton as a result of an electric shock which she received when a pump being removed by her and her husband from a well near their farm home came in contact with one of the Cooperative's uninsulated high-tension wires. In that case, the Supreme Court affirmed judgment for a directed verdict for the Cooperative on the grounds that Mrs. Hamilton and her husband were shown by the evidence to have known that wires carrying electricity were dangerous. Their testimony was that they did not see the wires which were in plain sight nor look for them, nor pay any attention to them, nor take any precaution because of them. Even assuming that this case might have some bearing upon the landlord and tenant question presented by the factual situation in the instant case, the distinction is obvious. In the Hamilton case, the evidence was that even though Mrs. Hamilton knew of the dangerous condition, she took no precautions to guard against it. In the instant case, as we said previously, there is no evidence to justify a ruling that as a matter of law, even though the respondent knew of the depression in the basement floor, she did not take due care with regard thereto and the question of whether or not she did take such care was submitted to the jury which found in her favor on that issue.

Coleman v. North Kansas City Electric Co., supra, was a common law action by an electrician against his employer for injuries he sustained when he came in contact with a high tension wire. In that case the Supreme Court relied upon the fact that the electrician assumed an exceedingly hazardous position by working in such close proximity to the high tension wire. As we have previously stated, the maintenance of this depression in the floor created a jury question as to whether or not such conduct on the part of the appellants constituted negligence, but certainly washing clothes in the basement even with respect to the respondent's knowledge of the depression cannot be said as a matter of law to constitute the assumption of an extremely hazardous activity by the respondent. The cases relied upon by the appellants and discussed briefly above do not rule the instant case.

We cannot agree with appellants' contentions that the principle stated in that portion of the Restatement of Torts quoted herein is applicable. It will be noted that the quotation refers to the *negligent* act of the party to be charged with contributory negligence. Respondent did not commit any act which should have been held by the trial court to constitute contributory negligence as a matter of law, because none of her acts can be said, as a matter of law, to have been negligent acts. It is true that respondent splashed some soapy water on the floor, but it was a jury question as to whether or not such splashing of soapy water, which occurred in the washing process and as to which there is no contention of deliberateness, constituted contributory negligence. It is true that the respondent placed the tubs and machine herself, but it was certainly for the jury to determine if she was negligent in so doing, in view of the lack of hoses on the tubs, the type of hose on the machine, the location of the electrical outlet in which to plug the machine and the location of the only drain—in this depression. Moreover, it should again be noticed that the respondent's verdict directing instruction did not

submit the slipping as the cause of injury but required the jury to find "* * * and that directly due to her foot going into said depression she sustained injury * *." The principle of the quotation from the Restatement is sound but its application in this case requires the presence of that missing factor; i. e., an act on the part of the respondent which can be said to constitute negligence. We rule against the appellants' contention that the respondent was contributorily negligent. It follows that the trial court did not commit reversible error by overruling the appellants' motions for a directed verdict.

The second allegation of reversible error raised by the appellants deals with the giving of Instruction No. 1, set out earlier herein. Appellants contend that the instruction ignored appellants' defense of contributory negligence. That contention cannot be sustained. As both appellants and respondent agree in their briefs, the rule is that where the trial court gives an instruction submitting the affirmative defense of contributory negligence, the verdict directing instruction must negate that defense, Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14. In the instant case, the trial court gave Instruction No. 3 by which the appellants submitted their affirmative defense of contributory negligence. However, respondent's verdict directing instruction required the jury to find "* * * and that at all times shown to you in the evidence plaintiff exercised ordinary care; * * *". This sufficiently complies with the above stated rule.

The appellants then contend the giving of the instruction was reversibly erroneous because it was not supported by the evidence. The appellants' argument states that "There are no facts in evidence on which to base this portion of the instruction that it was not a reasonably safe place." Bearing in mind the duty owed to the respondent by the appellants as we have found it (Thompson v. Paseo Manor South, Inc. supra and cases cited previously herein,) it is obvious that the ultimate fact to be found by the jury was whether or not, as stated by the instruction "* * * that by reason of the existence of said depression, the said basement was not a reasonably safe place for tenants of the defendants while using the laundry equipment and while exercising ordinary care in so doing * * *." Such an hypothesization submitted the issue of the duty the appellants owed to the respondent, Thompson v. Paseo Manor South, Inc., supra; Gray v. Pearline, supra; Peterson v. Brune, supra, and the obligation the respondent was under, knowing of this depression, to use due care in using these facilities, Coplen v. Zimmerman, supra. There was no need to require a finding that this depression rendered the basement inherently dangerous nor that the depression was improperly or negligently constructed. Since the existence of the drain was not disputed, although the jury was required to find its existence by this instruction, the issue to be submitted under the authorities cited herein was whether or not the basement with the depression existing in it was reasonably safe for the respondent and considering the purpose for which the area was used. This instruction, by that portion immediately above quoted, so required. We agree with appellants that the mere finding of the depression would not be enough, but the finding of a depression which made the area reasonably unsafe is, under these facts, sufficient. The appellants state that it is axiomatic that a jury is required to find conditions which make a thing or place unsafe; the facts must be hypothesized from which the jury can so find. Be that as it may, the facts are so hypothesized here, i. e., the required finding of the existence of the depression in this place used for laundry. We rule against the appellants as to their contention that this instruction is not supported by the evidence and that it fails to hypothesize the facts from which a finding could be made by the jury.

The appellants then contend that the instruction should not have been given because it ignored respondent's acts which

were the proximate cause of her injuries. They contend that the instruction is erroneous because it had no reference in it to the placing of soapy water on the floor. In the discussion earlier herein we held this not to be the proximate cause of the respondent's injury. Moreover, the appellants' own contributory negligence instruction submitted that very issue to the jury. It has been too often repeated for citation that all of the instructions are to be read together.

The last attack made upon the giving of this instruction is that it was "confusing and misleading." In this connection the appellants urge that the instruction has three proximate causes and that there can be only one. The appellants find these three by the following quotations from the instruction: [1] "* * * and that plaintiff's foot started to slip on the floor near the depression; and that directly due thereto her foot went into the said depression", [2] "and that directly due to her foot going into the said depression she sustained injury to her person;" [3] "and that her injury was directly caused by said unsafe condition, if you find that it was unsafe; and that her injury was directly caused by said negligence, if any, of the defendants; * * *." There is no merit to this contention. It is clear that there is only one proximate cause stated in that instruction, and that is that respondent's injury was directly caused by the unsafe condition of the depression, if it was found to be an unsafe condition. The other alleged proximate causes are actually only evidentiary findings, descriptive in character, and constitute the facts and surrounding circumstances leading up to the ultimate finding of proximate cause. Since it is not necessary that each of the facts in the chain of circumstances be separately stated and attributed to appellants' negligence so long as the ultimate fact of injury is found to be directly caused by appellants' negligence, Layton v. Palmer, Mo., 309 S.W.2d 561, at loc. cit. page 569, 66 A.L.R.2d 1242, it is not reversible error for the respondent to assume such an additional burden.

The appellants also complain that certain things therein are stated as conclusions without a requirement that the jury find them. For example, the appellants contend that this instruction states that the respondent's foot started to slip and that the jury is not required to so find. There are other similar contentions. This no doubt arises from the sparsity of insertions of the usual phrases, "if you so find", or "if so," or similar phraseology between the hypothesizations. However, in the final analysis, the test is how the instruction will naturally be understood by the average men and women who compose our juries, Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541; Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479. The instruction is certainly no model, and we are not to be understood as approving of its form generally, yet, under the factual situation presented in the instant case, we are of the opinion that the jury would understand that none of the hypothesizations were stated as facts, but each was to be found by them as a fact. The judicious insertion of the words, "if so," and "if you so find" in more frequent incidence would have vastly improved it. We find no reversible error in the giving of Instruction No. 1.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court.

Plaintiff's motion to dismiss defendants' appeal is, accordingly, denied, and the judgment of the circuit court is affirmed.

ANDERSON, P. J., WOLFE, J., and O. P. OWEN, Special Judge, concur.

RUDDY, J., not participating.